**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM PEREZ CERVANTES,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 1:14-cv-01647-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 13, 17) |

**I.**

**INTRODUCTION**

Plaintiff Adam Perez Cervantes[1] ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[2]

Plaintiff suffered from bipolar disorder, personality disorder, and drug addiction and alcoholism both in remission. For the reasons set forth below, Plaintiff's Social Security appeal

---

[1] Plaintiff passed away on August 30, 2013, due to an apparent drug overdose (AR 11-12); and this action is brought by his spouse.

[2] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 6, 7.)

shall be denied.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed a Title XVI application for supplemental security income on March 11, 2010.[3] (AR 72.) Plaintiff's applications were initially denied on July 9, 2010, and denied upon reconsideration on May 13, 2011. (AR 100-103, 109-113.) Plaintiff requested and received a hearing before Administrative Law Judge John Cusker ("the ALJ"). Plaintiff appeared for a hearing on August 31, 2012. (AR 38-60.) On January 22, 2013, the ALJ found that Plaintiff was not disabled. (AR 20-32.) The Appeals Council denied Plaintiff's request for review on August 15, 2014. (AR 1-3.)

### A.  Relevant Hearing Testimony

Plaintiff testified at the August 31, 2012 hearing. (AR 42-.) Plaintiff was born on April 3, 1984, and was 28 years old on the date of the hearing. (AR 42.) Plaintiff attended school until the tenth grade and only worked seasonally. (AR 43-44.) When Plaintiff did work he missed a lot because he would not go to work if he woke up and was having problems with voices. (AR 49.) Plaintiff would only go to work two weeks out of the month. (AR 49-50.) On the date of the hearing, Plaintiff was not married and was living with his mother and thirteen year old sister. (AR 42, 47.) He did not have a driver's license and was afraid to drive. (AR 42, 50.)

Plaintiff was unable to work because he heard voices every day and could not concentrate. (AR 44.) Plaintiff had a problem with alcohol, but not drugs. (AR 44.) Plaintiff did not currently have a problem with alcohol and "maybe once a year [had] a drink." (AR 45.) Plaintiff had a drink the prior January and went to rehab. (AR 45.) The rehab was ordered by the court, but it was Plaintiff's decision to go. (AR 45.) Plaintiff did not know why he was in court and ordered to go to rehab. (AR 45.) He completed rehab in April. (AR 45.) Plaintiff was currently attending daily Alcoholics Anonymous meetings. (AR 45-46.)

During the hearing, the ALJ stated that the record indicated that Plaintiff was apparently

---

[3] Plaintiff had a prior application for Social Security benefits denied initially on November 9, 2009. (AR 94-97.)

2

abusing alcohol at the time of his last job.  (AR 58.)  Plaintiff stated that he had never abused alcohol and was not really a drinker.  (AR 59.)  Plaintiff stated that he went to Alcoholics Anonymous every day to "try to stay away and be good and keep [himself] busy."  (AR 59.)

Plaintiff was receiving treatment from Blue Sky.  (AR 46.)  He took their relapse prevention classes, B test, bipolar classes, schizophrenia classes and men's group.  (AR 46.) Plaintiff saw a psychiatrist at Turning Point.  (AR 46.)  He went to Turning Point twice a week. (AR 46.)  They prescribed medication for him; and he saw a therapist and psychiatrist.  (AR 46.) Plaintiff was on Buspar, Celexa, and Risperdal and took his medication as prescribed.  (AR 46-47.)  He still heard voices every day even though he was on medication, but they are not as loud. (AR 47, 51-52.)

Plaintiff was able to dress and bathe himself, but could not prepare his own meals, do laundry, shop or do any housework because he got distracted.  (AR 48.)  Plaintiff attended church and went to Alcoholics Anonymous meetings every day.  (AR 48.)  Plaintiff rarely went out and had no friends.  (AR 49.)  Plaintiff could not concentrate when trying to read and write. (AR 50.)

Plaintiff suffered from post-traumatic stress syndrome because he jumped off a bridge into oncoming traffic in a suicide attempt when he was about 18 years old.  (AR 50.)  Plaintiff used to be on disability until he grabbed a police officer's gun and ended up going to jail about five years ago.  (AR 51.)  He was taking Seroquel at the time and was still hearing voices.  (AR 51.)  They took him off the Seroquel and put him on Risperdal.  (AR 51.)  Plaintiff went to Atascadero State Hospital for three months for evaluation and they put him on medications because they said he was not competent to stand trial.  (AR 51.)

**B.     ALJ Findings**

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff had not engaged in substantial gainful activity since March 11, 2010, the application date.

- Plaintiff had the following severe impairments: bipolar disorder, personality disorder, and drug addiction and alcoholism in remission.

- Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.
- Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: Plaintiff had sufficient ability to understand and remember simple instructions; sufficient ability to complete simple instructions, to follow directions without additional assistance, and to maintain adequate attention, concentration, persistence, and pace as needed to complete a full work day/workweek; adequate ability to maintain appropriate behavior with others, and was capable of accepting simple instructions and responding appropriately to feedback from supervisors; and, sufficient ability to be aware of ordinary hazards, to make simple decisions, to utilize transportation, and to cope with the demands of a routine work like environment.
- Plaintiff had no past relevant work.
- Plaintiff was born on April 3, 1984 and was 25 years old on the date of application, which is defined as a younger individual age 18-49.
- Plaintiff had a limited education and was able to communicate in English.
- Transferability of job skills was not an issue as Plaintiff had no past relevant work.
- Considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.
- Plaintiff had not been under a disability, as defined in the Social Security Act, since March 11, 2010, the date the application was filed.

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm

simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's.

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff contends the ALJ erred by improperly rejecting and disregarding the testimony of Plaintiff and his lay witness and by improperly weighing the treating physician testimony. Defendant responds that the ALJ properly considered the testimony of the lay witness and provided reasons germane to the witness to reject his testimony, gave sufficient reasons to reject Plaintiff's subjective complaints, and properly weighed the medical evidence.

### A.     Plaintiff's Credibility

Plaintiff argues that the ALJ erred by finding that Plaintiff's failure to follow prescribed and court ordered treatment detracted from his credibility. Plaintiff also contends that the ALJ erred by finding that his credibility was undermined by his ability to participate in activities of daily living. Defendant counters that the ALJ provided valid reasons to find that Plaintiff's allegations regarding his alleged symptoms and limitations were not credible.

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation and citations omitted). Determining whether a claimant's testimony regarding subjective pain or symptoms is credible requires the ALJ to engage in a two-step analysis. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not require the claimant to show that his impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. Smolen, 80 F.3d at 1282.

1  Second, if the first test is met and there is no evidence of malingering, the ALJ can only 2 reject the claimant's testimony regarding the severity of his symptoms by offering "clear and 3 convincing reasons" for the adverse credibility finding.[4]  Carmickle v. Commissioner of Social 4 Security, 533 F.3d 1155, 1160 (9th Cir. 2008).  The ALJ must specifically make findings that 5 support this conclusion and the findings must be sufficiently specific to allow a reviewing court 6 to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not 7 arbitrarily discredit the testimony.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) 8 (internal punctuation and citations omitted).

9  Factors that may be considered in assessing a claimant's subjective pain and symptom 10 testimony include the claimant's daily activities; the location, duration, intensity and frequency 11 of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, 12 effectiveness or side effects of any medication; other measures or treatment used for relief; 13 functional restrictions; and other relevant factors.  Lingenfelter, at 1040; Thomas, 278 F.3d at 14 958.  In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques 15 of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements 16 concerning the symptoms, and other testimony by the claimant that appears less than candid; 17 [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a 18 prescribed course of treatment. . . ."  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) 19 (quoting Smolen, 80 F.3d at 1284).

20  1.  Daily Activities

21  Plaintiff argues that his ability to bath and dress himself and attend church is insufficient 22 grounds for an adverse credibility finding.  There are two ways for an ALJ to "use daily activities 23 to form the basis of an adverse credibility determination: if the claimant's activity contradicts his 24 testimony or if the claimant's activity meets the threshold for transferable work skills."  Phillips 25 v. Colvin, 61 F. Supp. 3d 925, 944 (N.D. Cal. 2014).

---

[4] Defendant argues that the clear and convincing standard should not apply to evaluation of the claimant's testimony, however the Ninth Circuit has recently rejected this argument in Garrison v. Colvin, 759 F.3d 995, 1015 n.18 (9th Cir. 2014).

Review of the ALJ's opinion in this instance shows that the ALJ found that Plaintiff's activity contradicts his testimony. Further, the ALJ did not merely cite Plaintiff's ability to bath and dress himself and attend church as the basis for finding Plaintiff's daily activities support a finding that his testimony is not credible. The ALJ found that Plaintiff's testimony was not fully credible. (AR 27.) The ALJ noted that Plaintiff acknowledged he could prepare simple meals, do laundry and yard work, go outside by himself daily, and shop in stores. (AR 27.) He inconsistently testified that he did no housework. (AR 28.)

At the August 31, 2012 hearing, Plaintiff testified that he is able to dress and bathe himself, but cannot prepare his own meals, do laundry, shop or do any housework because he gets distracted. (AR 48.) On February 22, 2011, Plaintiff completed an adult function report. (AR 270-277.) Plaintiff reported that he prepared his own meals on a daily basis. (AR 272.) He did laundry and yardwork. (AR 272.) He went shopping for clothes and food. (AR 273.) During his examination with Dr. Lewis on March 26, 2011, Plaintiff reported that he vacuumed, washed dishes, cooked, swept, and did laundry. (AR 361.) The ALJ properly considered Plaintiff's inconsistent testimony regarding his daily activities in assessing his credibility.

2. Medical Record

The ALJ also found that the medical record did not support Plaintiff's allegations. (AR 28.) The ALJ noted that Plaintiff stated that he took medication and attended counseling and his medications were somewhat helpful in relieving his auditory hallucinations. (AR 27.) The ALJ found that the medical records show that Plaintiff denied hallucinations and was not complaint with his medications which also detract from the credibility of his allegations. (AR 27-28.) The medical record shows that Plaintiff had a recent history of frequent alcohol use, periods of time when he was off medication, and reported that he was improved with treatment. (AR 29.) After reviewing the medical record, the ALJ found that Plaintiff's failure to follow prescribed and court ordered treatment detracts from the credibility of his allegations. (AR 30.) "Specifically, [Plaintiff] had a history of poor treatment compliance, inconsistent reporting of drug abuse and alcohol addiction, he had denied auditory hallucinations, he had generally unremarkable mental status examinations, and he was capable of performing activities of daily living and personal care

as described above." (AR 30.)

Plaintiff stated that he took his medications as prescribed and attended counseling and his medications were somewhat helpful in relieving his auditory hallucinations. (AR 27, 46-47.) However, the ALJ noted that the medical records show that Plaintiff denied hallucinations and was not complaint with his medications which also detract from the credibility of his allegations. (AR 27-28.) The record demonstrates that contrary to Plaintiff's statement, he was not complaint with his medication. Numerous medical records indicate that he had not been taking his medication. (AR 329, 336, 386.)

The record also reflects that Plaintiff did not show for an appointment in December 2010. (AR 349, 389). He saw a mental health provider in April 2011 and did not seek any treatment until September 2011. (AR 388, 386.) Plaintiff was seen on September 8, 2011 and November 3, 2011 and there is no record of any treatment until January 2013. (AR 384, 388, 468-469.) The ALJ properly considered that Plaintiff's testimony that he was compliant with medication was inconsistent with the medical record.

3. <u>Substance Abuse</u>

The ALJ considered Plaintiff's inconsistent reporting of drug abuse and alcohol addiction. (AR 30.) The ALJ noted that Plaintiff testified that he went to court ordered rehabilitation, but did not have a problem with alcohol which is inconsistent with the medical record and detracts from the credibility of his allegations. (AR 27.) Plaintiff admitted to going to Alcoholics Anonymous meetings on a daily basis. (AR 27, 45-46.) During the hearing, Plaintiff testified that did not have a current problem with alcohol and drinks "maybe once a year." (AR 45.) Further, during the hearing Plaintiff testified that he had never abused alcohol and was not really a drinker. (AR 59.) However, the medical record shows that Plaintiff had a recent history of frequent alcohol use. (AR 29, 340-341 336, 352, 358, 384, 385-386.) The ALJ properly considered that Plaintiff's statements that he only drank once a year and had never had a problem with alcohol in making the credibility determination.

As to his inconsistent reports of drug use, the ALJ specifically asked Plaintiff if he had ever had a problem with drugs or alcohol. (AR 44.) Plaintiff responded, "Well, not drugs more,

but alcohol." (AR 44.) While the record reflects that Plaintiff had a history of drug use and admitted he had used Ecstasy, marijuana, and cocaine and had been addicted to crank, (AR 351-352, 358), it is unclear from the hearing transcript if Plaintiff was denying ever having a problem with drugs or asserting that he currently did not have a problem with drug use. However, even if the ALJ erred in finding that Plaintiff made inconsistent statements regarding his drug use, the ALJ properly considered that Plaintiff's statements regarding his alcohol use were contradicted by the medical record.

    4.    <u>The ALJ Did Not Err in the Credibility Finding</u>

The ALJ provided clear and convincing reasons to find Plaintiff's testimony was not credible which are supported by substantial evidence in the record.

**B.    Third Party Credibility**

Plaintiff also contends that the ALJ erred in determining the credibility of Plaintiff's lay witness. Defendant responds that the ALJ properly considered that the lay witness statement was not supported by the medical record and did not take into account Plaintiff's drug addiction and alcohol abuse. Further, Defendant argues that the third party statement was not probative evidence to support the disability claim.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." <u>Stout</u>, 454 F.3d at 1053; 20 C.F.R. § 404.1513(d)(4). "Lay witness testimony is competent evidence and cannot be disregarded without comment." <u>Bruce v. Astrue</u>, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1467 (9th Cir. 1996)). The ALJ must give specific reasons germane to the witness in discounting the lay witness testimony. <u>Stout</u>, 454 F.3d at 1056. If the ALJ gives reasons for rejecting the claimant's testimony that are equally relevant to similar testimony provided by lay witnesses, that would support a finding that the lay witness testimony is similarly not credible. <u>Molina</u>, 674 F.3d at 1114.

The ALJ considered the February 22, 2011 third party function report completed by Felix Perez and found the statement not credible. (AR 28.) Mr. Perez stated that Plaintiff has physical impairments which are not supported by the record. (AR 28.) In addition, he did not mention

1  Plaintiff's history of drug or alcohol abuse. (AR 28.) The ALJ found a pattern of exaggeration
2  and lack of candor that undermined Mr. Perez' statements. (AR 28.)

3  Relevant to this application for benefits, Mr. Perez completed a third party function
4  report on February 20, 2011.[5] (AR 262-269.) Mr. Perez stated that he had known Plaintiff for
5  about seven years and they went to dinner and shopped about once a month. (AR 262.) In
6  response to the section regarding daily activities, Mr. Perez stated that Plaintiff did chores at
7  home and visited with family. (AR 262.) Plaintiff was able to take care of his own personal
8  care, prepared his own meals daily, did laundry, took out the trash, and maintained the yard and
9  upkeep at his residence. (AR 263-264.) Plaintiff went out daily and traveled by walking, riding
10 in a vehicle or using public transportation. (AR 265.) Plaintiff shopped for food and clothing as
11 needed. (AR 265.) Mr. Perez stated that Plaintiff socialized with others on a daily basis. (AR
12 266.) He attended church and went to the library on a regular basis. (AR 266.)

13  The ALJ found that Mr. Perez' statements regarding Plaintiff's physical limitations were
14 not supported by the medical record and showed a pattern of exaggeration. (AR 28.) Mr. Perez
15 stated that Plaintiff was limited in walking, kneeling, memory, concentration and getting along
16 with others due to leg injuries and was on medication for stress, depression, bipolar, and
17 occasionally heard voices. (AR 267.) However, Mr. Perez also stated that Plaintiff was able to
18 walk for an extended time before needing to rest; his ability to pay attention depended on the
19 situation; and he finished what he starts and was good at following written and spoken
20 instructions. (AR 267.) While Mr. Perez reported that Plaintiff had been fired or laid off due to
21 an altercation with his employer at McDonalds, he stated that Plaintiff's ability to get along with
22 authority figures depends on the situation. (AR 268.) Plaintiff's ability to handle stress and
23 changes in routine was good. (AR 268.)

---

[5] Plaintiff contends the ALJ erred by failing to address the third party function report that was submitted by Mr. Perez in Plaintiff's prior application for benefits. However, this report was considered in denying the prior application for benefits, and the ALJ considered the third party report submitted by Mr. Perez addressing the relevant time period. The ALJ did not err by failing to address this prior statement in his opinion. Additionally, review of the report reveals that Mr. Perez only stated that Plaintiff was limited in his ability to get along with and trust others and loses concentration easily. (AR 210.) These are the same limitations stated in the February 20, 2011 report which the ALJ addressed in his opinion. Finally, the ALJ properly found that Mr. Perez exaggerated Plaintiff's limitations as discussed herein.

The ALJ correctly found that the medical record does not show that Plaintiff had any limitations in walking or kneeling. The ALJ may discount lay witness testimony that conflicts with the medical evidence. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). While Plaintiff points to Plaintiff's medical records from 2004 showing that he sustained a leg injury, there are no current records indicating that Plaintiff had received treatment for any current leg condition. The only mention of leg pain during the relevant time period is an intake form stating that Plaintiff has left leg pain depending on the weather. (AR 456.) The medical documentation during the relevant time period shows normal extremity examination and that Plaintiff's gait was normal. (AR 316, 333, 337, 339, 341, 343.) The ALJ properly considered that Mr. Perez' statements regarding Plaintiff's physical limitations were not supported by the medical record.

Further, Mr. Perez stated that Plaintiff was limited in his memory, concentration and getting along with others. (AR 267.) However, he also stated that Plaintiff did not need reminders for his personal care or medication (AR 264), read and watched television daily, and did not need reminders or someone to accompany him. (AR 266.) Mr. Perez also stated that had noticed no unusual behavior or fears in Plaintiff. (AR 268.)

Mr. Perez stated that Plaintiff requires medication to be able to handle stress but he did not mention Plaintiff's alcohol use. The ALJ found that Mr. Perez' failure to mention Plaintiff's history of drug and alcohol abuse showed a lack of candor. (AR 28.) The report itself does not ask any question regarding the claimant's substance abuse and therefore, the ALJ erred in finding a lack of candor. However, the ALJ properly considered the third party function report showed an exaggeration of Plaintiff's symptoms by the witness. The ALJ provided specific reasons germane to the witness in discounting the lay witness testimony. Stout, 454 F.3d at 1056. The ALJ did not err in determining the credibility of the lay witness testimony.

### C. Weight Provided to Treating Physician Testimony

Finally, Plaintiff contends that the ALJ erred by not giving controlling weight to the opinion of the treating physician that Plaintiff had schizophrenia, chronic paranoia type and other mental health issues that resulted in significant impairment. Defendant argues that the ALJ considered the opinions of the treating providers in finding that Plaintiff had severe impairments,

but properly gave controlling weight to the opinions of the consultative examiner and the agency physicians.

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). In general a treating physician's opinion is entitled to greater weight than that of a nontreating physician because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted). If a treating physician's opinion is contradicted by another doctor, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record. Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1198 (9th Cir.) (quoting Bayless v. Barnhart, 427 F.3d 1121, 1216 (9th Cir. 2005)).

1. Relevant Medical Record

On August 14, 2009, Plaintiff had a psychiatric evaluation by Dr. Damania. (AR 295-298.) Plaintiff stated he had been sober for three years and was regularly attending Alcoholics Anonymous meetings. (AR 296.) Plaintiff had been released on parole and was attending school five days per week and volunteering at a church. (AR 297.) Dr. Damania found no evidence of hallucinations, delusions, or thought disorders. (AR 297) He opined that Plaintiff was able to understand, carryout and remember simple one and two step job instructions in an unskilled setting; respond appropriately to coworkers, supervisors and the public; had no difficulty responding to examiner; and was able to respond appropriately to usual work situations and deal with changes in routine work setting with normal supervision. (AR 298.)

On December 6, 2009, Plaintiff was seen in the emergency room for a corneal injury and had a normal psychological examination. (AR 315-316.)

On July 20, 2010, Plaintiff was seen by Fresno County Mental Health and was found to have significant impairment. (AR 350.) Plaintiff was not taking anti-psychotic medications. (AR 351.) Plaintiff stated that he wanted to get back on his medications. (AR 352.) Plaintiff's behavior was within cultural norms, but he was guarded. (AR 353.) Plaintiff's speech was normal. (AR 353.) He was calm with a fluctuating affect. (AR 353.) Plaintiff was oriented

times four. (AR 353.) He reported auditory hallucinations. (AR 353.) Plaintiff's though flow was logical and rational. (AR 353.) His thought content was within normal limits. (AR 354.) Plaintiff's memory was intact. (AR 354.) His abstraction and interpretation were intact and judgment and insight were fair. (AR 354.) Plaintiff was diagnosed with psychotic disorder and mood disorder and a GAF of 50. (AR 354.)

On August 4, 2010, Plaintiff was seen at Community Regional Medical Center for a dog bite. (AR 342.) Neurological and psychiatric findings are normal. (AR 343.)

On August 5, 2010, Plaintiff was attempting to prostitute himself and was stopped by the police. (AR 340.) He became combative with the offices and was admitted to Community Regional Medical Center with abrasions and was in an intoxicated state. (AR 340-341.) Neurological and psychiatric findings are normal. (AR 341.)

Plaintiff walked in to Fresno County Mental Health complaining of hallucinations on October 4, 2010 and was admitted as a 5150[6] at Community Regional Medical Center on October 5, 2010. (AR 329, 338.) He reported that he did not have a regular physician and had not been taking antipsychotic medication. (AR 329.) His auditory hallucinations had gotten worse about three weeks prior and he had been attempting to handle them without medication. (AR 329.) Plaintiff was alert and cooperative. (AR 330.) He told his story in a rational coherent, and goal directed fashion. (AR 330.) Plaintiff appeared withdrawn during the interview, sitting in the corner of the room and speaking softly. (AR 330.) Plaintiff did not appear to be depressed. (AR 330.) Plaintiff was oriented, with generally intact memory. (AR 330.) Insight, judgment, and impulse control appeared to be reasonably well preserved with the possible exception of impulse control in the area of auditory hallucinations. (AR 330.) Plaintiff was diagnosed with schizophrenia, chronic paranoid type, acute exacerbation and a Global Assessment of Functioning[7] ("GAF") scale of 20. (AR 330.) Plaintiff was started on medication

---

[6] California Welfare and Institutions Code section 5150 provides that "[w]hen a person, as a result of a mental health disorder, is a danger to others, or to himself or herself, or gravely disabled," he can be taken "into custody for a period of up to 72 hours for assessment, evaluation, and crisis intervention, or placement for evaluation and treatment in a facility designated by the county for evaluation and treatment and approved by the State Department of Health Care Services." Cal. Welf. & Inst. Code § 5150.

[7] "The GAF score is a 'multiaxial' assessment that reflects a clinician's subjective judgment of a patient's overall

1 and instructed to find a primary care physician upon release. (AR 333.)

2 On November 30, 2010, Plaintiff was seen by Fresno County Mental Health. He was
3 agitated, but reported feeling better. (AR 337.)

4 Plaintiff failed to show for an appointment on December 22, 2010. (AR 348.)

5 On March 26, 2011, Dr. Lewis performed a comprehensive psychiatric examination on
6 Plaintiff. (AR 357-362.) She diagnosed Plaintiff with nicotine dependence, alcohol abuse,
7 cannabis dependence in reported remission, opiate dependence in reported remission, and a GAF
8 of 65. (AR 361-362.) Dr. Lewis opined that Plaintiff was not significantly impaired in any area
9 and the likelihood of him emotionally deteriorating in a work setting was minimal. (AR 362-
10 363.)

11 Plaintiff saw Dr. Chofia on September 8, 2011. (AR 385-386.) Plaintiff reported that he
12 had been off Seroquel for 2 months and got depressed. (AR 385.) He started using alcohol
13 again; but reported being off alcohol. (AR 385.) Dr. Chofia noted no depression, no mania, just
14 sleep issues which was explained by alcohol associated disorders. (AR 385.) Plaintiff was
15 cooperative, with normal motor activity. (AR 385.) He was alert; cognition was grossly intact;
16 and speech was normal, not pressured. (AR 385.) Plaintiff was oriented to person, place, and
17 time; thought processes were organized, linear and goal directed, with no loose association
18 whatsoever. (AR 385.) Plaintiff had hallucinations. (AR 385.) His mood was euthymic and
19 affect was mood congruent and appropriate, not labile. (AR 385.) Insight and judgment were
20 improved. (AR 385.) Plaintiff had a GAF of 58. (AR 386.) Plaintiff was actively using
21 alcohol; but was now stable since he had decreased his substance abuse. (AR 386.)

22 Plaintiff was seen by Dr. Chofia on November 3, 2011. (AR 383-384.) Plaintiff reported
23 that he was going into a court ordered drug rehab in Merced. (AR 383.) Plaintiff said he had
24 been sober again. (AR 383.) Plaintiff appeared stable. (AR 383.) His depression, mood and
25 thoughts were stable and improved. (AR 383.) There was no gross psychosis noted in session.

---

27 level of functioning. . . ." Green v. Astrue, No.5:10-cv-01294-AJW, 2011 WL 2785741, at *2 n.2 (C.D.Cal. July 15,
2011) (quoting American Psychiatric Association, Diagnositic & Statistical Manual of Mental Disorders Multiaxial
28 Assessment 30, 34 (4th ed. Text rev. 2000) (DSM-IV)).

1  (AR 383.)  Plaintiff was cooperative, calm, relaxed and docile appearing.  (AR 383.)  He was
2  alert, cognition was grossly intact, and speech was normal.  (AR 383.)  Plaintiff was oriented to
3  person, place and time; his thoughts were organized, linear and goal directed; there was no loose
4  association whatsoever; mood was euthymic; affect was mood congruent and appropriate, not
5  labile.  (AR 383.)  Plaintiff's insight and judgement were relatively fair; impulse control was
6  improved; and he had a GAF of 60.  (AR 384.)  Plaintiff had recently and actively been using
7  alcohol; but had decreased his substance abuse for now.  (AR 384.)

Plaintiff was seen at Fresno County Mental Health on January 18, 2013.  (AR 468.)  His affect was in the normal range.  (AR 468.)  Plaintiff had moderate to severe depression and was withdrawn.  (AR 468.)  Plaintiff had reported having problems with his family.  (AR 468.)  He had moderate to severe anxiety and was anxious/tense.  (AR 468.)  He showed moderate problems with his thought processes and was paranoid.  (AR 468.)  Plaintiff had moderate problem with his cognitive process with poor attention/concentration and memory.  (AR 468.)  Plaintiff reported that things were good at home.  (AR 468.)  He was found to have significant impairment, with a GAF of 40.  (AR 469.)

It appears that Plaintiff was seen at Fresno County Mental Health on February 5, 2013, but there are no records for this visit.  (AR 457.)

2.     The ALJ Did Not Err in the Weight Provided to Treating Physician Records

If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [it will be given] controlling weight."  20 C.F.R. § 404.1527(c)(2).  If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the Administration considers specified factors in determining the weight it will be given.  Orn, 495 F.3d at 633.  "Those factors include the '[l]ength of the treatment relationship and the frequency of examination' by the treating physician; and the 'nature and extent of the treatment relationship' between the patient and the treating physician.  Id. (citing 20 C.F.R. § 404.1527(d)(2)(i)-(ii)).

While Plaintiff argues that the opinions of the treating physicians should be credited as true because they are uncontradicted, there are contradictory medical opinions in the record. Review of the medical records in this case shows that Plaintiff's medical treatment has been sporadic and inconsistent. There are no records that demonstrate that any medical provider has developed a lengthy relationship with Plaintiff nor is there a record of frequent examinations.

The ALJ considered Plaintiff's medical record in his opinion. He noted that Plaintiff was hospitalized on October 5, 2010 pursuant to California Welfare and Institutions Code section 5150, but the record does not show any subsequent treatment. (AR 28-29.) Plaintiff again sought emergency room treatment to restart routine and conservative mental health medications on November 30, 2010, but failed to appear for his scheduled psychiatric treatment in December of 2010. (AR 29, 336-337, 349.) Plaintiff presented to Fresno County Mental Health on April 5, 2011, and did not seek treatment again until September 8, 2011. (AR 29-30, 385-386, 388.) The record supports that ALJ's finding that Plaintiff did not seek subsequent treatment following his commitment in October 2010.

The ALJ considered the opinions of Plaintiff's treating providers in determining that Plaintiff suffered from severe impairments, but gave weight to the opinions of Dr. Morris the agency physician and Dr. Lewis the examining physician. (AR 30.) The ALJ found that Dr. Lewis opined that Plaintiff did not appear to be suffering from a major medical disorder, had no significant impairment in any area, and the likelihood of Plaintiff deteriorating emotionally in a work environment was minimal. (AR 30.) However, the ALJ considered that Dr. Morris found greater evidence of impairment in the treatment records. (AR 30.) The ALJ agreed with Dr. Morris that Plaintiff's primary issues were characterological and substance abuse related. (AR 30.)

Dr. Lewis performed a comprehensive psychiatric examination of Plaintiff on May 26, 2011. (AR 357-363.) Dr. Lewis found Plaintiff to be cooperative and pleasant. (AR 358.) His conversation, pace and intensity were easily understood with no obvious expressive or receptive deficits. (AR 358.) Speech was logical, coherent, and concise; articulation was clear; velocity and volume normal; stream of mental activity was within normal limits; steam of consciousness

was linear, logical, coherent, and goal directed. (AR 359.) There was no indication of hallucinations or delusions. (AR 359.) Plaintiff's mood was euthymic and affect was appropriate. (AR 359).

Dr. Lewis found that Plaintiff's global capacity to act purposely, think rationally, and deal effectively with his environment was not impaired. (AR 360.) Plaintiff's fund of knowledge was below what would be expected. (AR 360.) Plaintiff was able to differentiate appropriately and his judgment was within normal limits. (AR 360.) His memory was not significantly impaired. (AR 360-361.) Plaintiff's attention and concentration were satisfactory. (AR 361.) Plaintiff was diagnosed with nicotine dependence, alcohol abuse, cannabis dependence in reported remission, opiate dependence in reported remission, and a GAF of 65. (AR 361-362.)

Dr. Lewis found that Plaintiff's "reported symptoms of auditory hallucinations, bipolar and posttraumatic stress disorder appear to be inconsistent and the presentations of symptoms are not typical of a major mental disorder." (AR 362.) Dr. Lewis opined that, despite the reported symptoms, Plaintiff did not appear to be suffering from a major mental disorder at the time of the examination and appeared to be able to function adequately. (AR 362) Dr. Lewis found no significant impairment. (AR 362-63) Where the treating physician's opinion is contradicted by the opinion of an examining physician who based the opinion upon independent clinical findings that differ from those of the treating physician, the nontreating source itself may be substance evidence, and the ALJ is to resolve the conflict. Andrews, 53 F.3d at 1041.

The contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, however, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). Here, the opinion of Dr. Morris is consistent with Dr. Lewis' opinion that Plaintiff is not significantly impaired.

Dr. Morris completed a mental residual functional capacity assessment on May 12, 2011. (AR 364-366.) Dr. Lewis found Plaintiff to be moderately impaired in his ability to understand and remember detailed instructions; ability to carry out detailed instructions; ability to perform

activities within a schedule, maintain regular attendance and be punctual within customary tolerances; ability to interact appropriately with the general public; ability to accept instructions and respond appropriately to criticism from supervisors; ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and ability to respond appropriately to changes in the work setting. (AR 364-365.) She found Plaintiff was not significantly limited in any other area. (AR 364-365.)

Dr. Morris did not find objective evidence in the notes to support hallucinations, noting the record reflects that he appears delusional, internal preoccupied, impaired/delusional, etc. (AR 377.) Dr. Morris found that Plaintiff's primary issues appear to be characterological and substance related and that moderate limitations are warranted. (AR 377.) She opined that Plaintiff could understand and remember simple instructions; could complete simple instructions, follow directions without additional assistance, and maintain adequate concentration, persistence, and pace to complete a full work day/week; could maintain appropriate behavior with others and accept simple instructions and respond appropriately to feedback from supervisors; and would be aware of ordinary hazards and could make simple decisions, utilize transportation, and cope with the ordinary demands of a routine work-like environment. (AR 366.)

Although there are records from different providers that support a different opinion, it is for the ALJ to resolve conflicts in the medical evidence. Andrews, 53 F.3d at 1041. Here, Plaintiff's mental health treatment has been sporadic and the records show that while he has had visits where his mental health providers have found him to be significantly impaired, other records support the conclusion that he is not significantly impaired. The ALJ has the discretion to weigh the value of the different medical opinions, resolve conflicts in the evidence, and determine which opinions to reject or accept. Lingenfelter, 504 F.3d at 1042. The ALJ's opinion sets forth "specific and legitimate reasons" supported by substantial evidence in the record to support the medical findings. "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). The ALJ did not err in failing to give controlling weight to the testimony of Plaintiff's treating physicians.

## V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ did not err in determining the credibility of Plaintiff and his lay witness or in the weight assigned to the treating physicians' opinions. Accordingly,

IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Adam Perez Cervantes. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **November 16, 2015**

UNITED STATES MAGISTRATE JUDGE